UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

        Plaintiff,                    Case No. 21-cr-20010

v.                                        Paul D. Borman
                                         United States District Judge

KYLE FLOYD,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS (ECF NO. 18)

On March 25, 2021, Defendant filed a Motion to Suppress Tangible Evidence and Statements. (ECF No. 18.) On April 15, 2021, the Government filed a Response in Opposition. (ECF No. 22.) On April 22, 2021, Defendant filed a Reply. (ECF No. 23.) On July 1, 2021, the Court held an in-court evidentiary hearing at which the parties introduced audio/video evidence of the incident, and the Government called three police officer witnesses. The Court then provided the parties an opportunity for oral argument in support of their positions.

Thereafter, the Court ruled from the bench, granting Defendant's Motion to Suppress Tangible Evidence and Statements, setting forth reasons stated on the record, and the cases cited by the Court. (ECF No. 26, Hearing Transcript at PageID.213-14.) This Opinion elaborates on the Court's bench ruling.

During the final argument, the Court requested that the parties replay the audio/video of the seizure of Defendant, which confirmed that the Detroit Police Officers Hogan and Smith walked up to Defendant as he was exiting the liquor store, and seized him by grabbing his arms, before asking him if he had a Concealed Pistol License (CPL). In Michigan, a person can lawfully carry a concealed pistol with an extended ammunition magazine if he has a CPL.[1]

The Assistant U.S. Attorney conceded on multiple occasions during the hearing that Defendant had not answered the CPL question before the officers seized him.[2] The AUSA contended that the stop was proper under the Supreme Court decision in *Terry v. Ohio*, 88 S. Ct. 1868 (1968). The Court disagrees.

The officers had no prior knowledge of the Defendant, no knowledge that he had been convicted of a felony, or had any criminal record. The officers saw an individual exiting a liquor store with his purchase, and an inch of an extended magazine. Reasonable suspicion requires more than a hunch.

As the United States Court of Appeals noted in *United States v. Smith*, 594 F.3d 530, 538 (6th Cir. 2010), "officers can ask questions without reasonable

---

[1] The Assistant U.S. Attorney conceded (at ECF No. 26, Transcript, PageID.140, App. p. 29, lines 22-24) that "if you have a CPL, I believe under state law you could legally carry in a liquor store."

[2] ECF No. 26, Transcript:
    (1) PageID.206, App. p. 95, lines 5-8.
    (2) PageID.208, App. p. 97, lines 11-13.
    (3) PageID.210, App. p. 99, lines 5-8.

suspicion. Furthermore, they can position themselves immediately beside and in front of a suspect and even reach across a suspect, provided they leave a way out," citing *United States v. Drayton*, 122 S. Ct. 2015 (2002). In this case there was not a "way out," there was an "intentional application of physical force." *Smith*, 594 F.3d at 536.

The police officers walked up to Defendant and seized him immediately. Officer Hogan testified that he did not recall whether Defendant gave an answer to his question whether he had a CPL before the officer reached into Defendant's pocket: "I don't recall if the answer was before or after." (ECF No. 26, PageID.157, App. p. 46, lines 5-7.) The AUSA then said: "Okay. It's on the video as well, right?" and Hogan answered "Yes." (*Id.* at lines 8-9.)

The audio/video (1) shows the two officers walk up to Defendant, who is holding a bag containing liquor, and immediately seizing both of his arms, and (2) does not show Defendant's lips moving, i.e., answering a question or saying anything.

The Court concludes that the officers violated Defendant's personal Fourth Amendment right to be secure against an unreasonable seizure and search. The facts in *Terry v. Ohio*, 88 S. Ct. 1868 (1968), which the Government relies on, involved a suspect who had, on multiple occasions, acted suspiciously – peering into a store, walking on, starting back, joining and conferring with his companion, who went

3

through this same performance about a dozen times. The two also talked with a third man. The officer, thinking that the suspects were "casing" a stickup, and might be armed, confronted the three men, identified himself, and asked the suspects for their names. When the men only mumbled something, the officer spun Terry around and patted his breast pocket, felt a pistol, and removed it. No similar suspicious conduct by Defendant Floyd occurred here.

The Supreme Court noted in *Terry*, 88 S. Ct. at 1879, footnote 16: "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." In the instant case, a "seizure" did occur prior to the officers becoming aware that Defendant, who was exiting a liquor store with a purchase in his hands, did not have a CPL. Thus, the officers did not have a reasonable suspicion that Defendant was committing or was about to commit a crime.

Accordingly, because the officers violated Defendant's Fourth Amendment right to be free from an illegal seizure, the Court **GRANTS** Defendant's motion to suppress the seizure of the gun and any statements made by Defendant after the arrest

(ECF No. 18), as fruit of the poisonous tree under *Wong Sun v. United States*, 83 S. Ct. 407 (1963).

IT IS SO ORDERED.


Dated: July 6, 2021                                  s/Paul D. Borman
                                                     Paul D. Borman
                                                     United States District Judge